UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| KLINTEN CRAIG, | ) |
| Plaintiff, | ) Civil Action No. 2:25-56-DCR-CJS |
| v. | ) **REPORT AND RECOMMENDATION** |
| TIKTOK INC., et al. | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Klinten Craig's Motion to Dismiss Defendants' Motion for Order to Compel Testimony and Enforce Deposition Subpoenas Against Nonparties Antoine and Jeremiah Smith-Rouse. (R. 24). Defendants responded. (R. 29). The Motion is ripe for consideration and preparation of a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons discussed herein, it will be recommended that the Motion to Dismiss (R. 24) **be granted.**

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

This miscellaneous action is before this Court after Defendants filed a Motion to Compel (*see* R. 1) seeking to enforce a deposition subpoena issued in connection with a multidistrict litigation ("MDL") case ongoing in the Northern District of California (Case No. 22-MD-3047-YGR). Plaintiff contests the Motion to Compel and argues this ancillary miscellaneous case should be dismissed because fact discovery is complete in the underlying MDL. (*See* R. 24).

**A.   The Underlying Multidistrict Litigation**

On July 26, 2022, Plaintiff Klinten Craig filed a Complaint in the Western District of Kentucky against several social media companies, including Meta and TikTok. (*See* R. 1-1 at Page

ID 10-11). He alleges that, as a result of his use of the platforms as a minor, he suffered personal injuries, including addiction, depression, anxiety, and self-harm. (*Id.* at Page ID 13). He asserts a number of claims under theories of strict liability, negligence, fraud, and violations of trade and consumer protection laws. (*Id.* at Page ID 14-15).

On October 6, 2022, the Judicial Panel on Multi District Litigation created MDL No. 3047 ("the MDL"), centralizing twenty-eight actions involving personal injuries stemming from social media use by adolescents. (*See* 22-MD-3047-YGR, R. 1). An order was quickly entered staying all outstanding discovery so the Northern District of California could set the framework for the MDL. (*See* 22-MD-3047-YGR, R. 2 at ¶ 5). On April 4, 2023, Plaintiff filed his Short Form Complaint, joining the MDL. (*See* R. 1-1).

On February 8, 2024, Case Management Scheduling Order No. 10 was entered, setting the schedule for all cases in the MDL. (*See* 22-MD-3047-YGR, R. 604). Therein, the Northern District of California laid out a process whereby twenty-four bellwether plaintiffs would be selected for discovery. (*Id.* at 4). For those bellwether cases, fact discovery was initially set to close on December 20, 2024. (*Id.* at 2). After fact discovery concluded, ten cases would be selected from the pool of bellwethers to proceed to trial. (*Id.* at 4).

On April 19, 2024, the Northern District of California selected the discovery bellwethers. (*See* 22-MD-3047-YGR, R. 785). Plaintiff's case was selected to move forward with discovery. (*See* 22-MD-3047-YGR, R. 1023; *see also* R. 1 at 2). Thereafter, the fact discovery deadline was pushed to April 4, 2025. (*See* 22-MD-3047-YGR, R. 1159).

**B.    The Discovery Dispute**

Early in discovery, Plaintiff filed his Plaintiff Fact Sheet, wherein he identified his former foster parents, Antoine and Jeremiah Smith-Rouse, as potential witnesses. (R. 1-2 at Page ID 77-

2

78). Specifically, Plaintiff indicated that the Smith-Rouses might have "significant information concerning: (1) [his] use of social media and (2) [his] claimed injuries, illnesses, and/or conditions." (*Id.*). The Smith-Rouses are residents of Burlington, Kentucky. (*See* R. 1-3; *see also* R. 1-4).

On February 11, 2025, Defendants notified Plaintiff of their intent to depose the Smith-Rouses. (*See* R. 1-6; *see also* R. 1-7). By March 3, 2025, the Smith-Rouses had both been served with subpoenas, (*see* R. 1-3; *see also* R. 1-4), wherein they were instructed to appear at a nearby hotel for depositions on March 19, 2025 (R. 1-6 at Page ID 96; R. 1-7 at Page ID 112). The following day, the Smith-Rouses called defense counsel indicating that they were unavailable on that date. (R. 1-14 at Page ID 215). The depositions were rescheduled for March 25, 2025. (*Id.*). However, in that call the Smith-Rouses also informed that because the Kentucky Cabinet for Health and Family Services ("Kentucky Cabinet") advised them not to disclose confidential information about their foster children, they would not answer questions about Plaintiff. (*Id.*).

The Smith-Rouses appeared for their depositions as scheduled. (*Id.* at 216). Early in both depositions the Smith-Rouses refused to answer questions due to concerns about the Kentucky Cabinet's confidentiality requirements. (R. 1 at Page ID 4-5). Defense counsel concluded both depositions after confirming the Smith-Rouses would not answer questions about Plaintiff. (*Id.*).

After reaching out to the Kentucky Cabinet multiple times to discuss the issue, "Defendants determined that a motion to compel would be necessary." (R. 1-14 at Page ID 216). Thereafter, Defendants called the Smith-Rouses three times to try to meet and confer before proceeding with a motion. (*Id.*). The Smith-Rouses did not answer or otherwise respond to any of the calls. (*Id.* at Page ID 217).

3

C.  **Procedural History**

On April 11, 2025, Defendants filed the pending Motion for Order to Compel Testimony and Enforce Depositions Subpoenas Against Nonparties Antoine and Jeremiah Smith-Rouse (R. 1), prompting the instant miscellaneous action to be opened in this Court. Plaintiff Craig responded in opposition to the Motion, arguing that Kentucky law prohibits the Smith-Rouses from testifying about Plaintiff. (R. 11). Defendants replied. (R. 13).

The Court set the matter for telephonic Status Conference. (R. 14; *see also* R. 18). At the conference, after defense counsel explained the current posture of the case, the Court granted the Smith-Rouses an extension to respond. (*See* R. 19). The Smith-Rouses responded *pro se*, arguing that because as foster parents they are bound by strict confidentiality requirements, they cannot testify about Plaintiff. (R. 20). More specifically, the Smith-Rouses pointed out that they are still foster parents and the Kentucky Cabinet advised them that disclosure of information relating to Plaintiff might result in closure of their home as an approved, available foster home. (*Id.* at Page ID 280).

On June 13, 2025, the Northern District of California selected the bellwether cases that would proceed to trial. (*See* 22-MD-3047-YGR, R. 2047; *see also* 22-MD-3047-YGR, R. 2283). Plaintiff Craig's case was not selected among those to proceed to trial at this time, in part because Defendants allege Craig filed his action after the statute of limitations had expired. (22-MD-3047-YGR, R. 2283 at 43-44, 50).[1] The MDL court also indicated that "[a]ll of the discovery has been

---

[1] At that proceeding, the issue was discussed as follows:
    THE COURT:    Okay. And is there a statute of limitations issue with Craig?
    MR. HALPERIN:    Craig, similarly, does have a statute of limitations defense. I don't have the details, Your Honor, of Craig's statute of limitations argument in front of me.
    THE COURT:    Well, does anybody on the defense side have that?
    (Pause in Proceedings.)
    MR. HALPERIN:    Your Honor, Mr. Craig turned 18 in May of 2019, did not file suit until July of 2022, more than three years after turning 18.

taken." (*Id.* at 51). Counsel on both sides of the MDL and Plaintiff interpreted this statement as an order closing discovery. (*See* R. 24-1 ("Now that SK has not been picked as a bellwether, and as the Court made clear today, discovery in this matter is closed."); *see also* R. 24-3 ("Given St. Charles was not selected into the trial pool on Friday, we will not be proceeding with depositions of Mr. Madere and Mr. Dwyer at this time, and we will stand down on further discovery until St. Charles is up for trial in a future wave of the MDL.")). Accordingly, Plaintiff Craig requested that Defendants withdraw the pending Motion to Compel. (R. 24-2 at Page ID 298). However, Defendants disagree with Plaintiff's view of the current posture of the MDL case and insist that "[u]nless Plaintiff Craig is going to dismiss his case, Defendants intend to proceed with the Motion to Compel." (R. 24-2 at Page ID 296).

Unsatisfied that the state of the record from the filings then to date allowed for an informed decision, the Court ordered the parties to identify an individual from the Kentucky Cabinet to testify at a hearing on the matter. (R. 26). Defense counsel represented they had contacted the Cabinet's Office of Legal Services, which Office subsequently informed that the Department of Community Based Services would "let [the Smith-Rouses] know it is fine that they testify to matters related to this case and this youth." (R. 27 at Page ID 306). Plaintiff's counsel represented they had communicated with the Kentucky Cabinet's General Counsel, who likewise responded that the Department for Community Based Services would "let [the Smith-Rouses] know it is fine

---

He testified that in 2018, while he was still a minor, so more than three years prior, three separate healthcare providers attributed his injuries to social media.
        THE COURT:        All right. Response?
        MS. HAZAM:        Lexi Hazam for Plaintiffs.
Your Honor, I believe that Plaintiffs would dispute the application of the statute of limitations. I'm not prepared to do so in any detail today. Counsel for these Plaintiffs is in the courtroom.
But what I would like to note is that Plaintiffs do not believe it's appropriate to have two Plaintiffs in the trial bellwether pool as to whom Defendants are raising these affirmative defenses and who may, therefore, be disposed of at summary judgment.

that they testify to matters related to this case and this youth." (R. 28 at Page ID 309). Both sides represented that this should satisfy the Court's Order about having a Kentucky Cabinet representative testify. (R. 27 at Page ID 307; R. 28 at Page ID 310).

On June 20, 2025, Plaintiff filed the pending Motion to Dismiss Defendants' Motion for Order to Compel Testimony and Enforce Deposition Subpoenas Against Nonparties Antoine and Jeremia Smith-Rouse. (R. 24). Defendants responded in opposition. (R. 29). The motion has now been submitted to the undersigned for Report and Recommendation.

**II.   ANALYSIS**

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). Plaintiff asks the Court to dismiss the pending Motion to Compel filed by Defendants. (R. 24). Plaintiff argues the Motion (R. 1) should be dismissed because discovery is closed in the MDL case as to parties who were not selected as bellwether plaintiffs. (*See id.* at Page ID 288). Defendants responded in opposition, arguing that the Motion to Compel should not be dismissed because "Plaintiff's contention that discovery is stayed . . . is false," and even if discovery is closed, Defendants tried to take the depositions of the Smith-Rouses when fact discovery was open. (R. 29 at Page ID 313).

It is true that in most circumstances, Defendants would be entitled to demand answers from the Smith-Rouses to their depositions questions. *See* Fed. R. Civ. P. 37(a)(3)(B)(i). However, there are several factors that militate, in this case, against granting the pending Motion to Compel, at least at this time. To start, this miscellaneous action is before the Court based on a subpoena issued in an ongoing MDL case, which is currently heading towards its first round of trials. (*See* 22-MD-3047-YGR). Plaintiff's case was not selected to proceed to trial for two distinct reasons. First, his case was not considered representative of the other cases in the MDL. (22-MD-3047-

6

YGR, R. 2283 at 43-44, 50). Second, his case might be summarily dismissed because it was allegedly filed after the statute of limitations had already expired. (*Id.*). The latter is important to note because the statute of limitations question in Plaintiff's case may be litigated and adjudicated without the need to depose the Smith-Rouses.

Another complicating factor is that the Smith-Rouses were Plaintiff Craig's foster parents. In fact, that is the only reason the parties are before this Court. (*See* R. 1; *see also* R. 11; R. 20; R. 27; R. 28). The Smith-Rouses complied with Defendants' subpoenas to the extent possible without discussing Plaintiff's time as their foster child. (*See* R. 1). They object to testifying to matters so relating on the basis of Kentucky law. In total, the Smith-Rouses and parties—in arguing for or against a finding of privilege or other bases not to answer—point to six different provisions within the Kentucky Revised Statutes, Kentucky Administrative Regulations, and the Foster Home Contract. (*See* R. 11; *see also* R. 13; R. 20). To resolve the merits of the Motion to Compel, therefore, the Court would have to unravel this highly regulated area of state law. In an effort to efficiently address this legal roadblock between the parties, the Court directed each side to follow up with the Cabinet and identify the appropriate individual who could be called in to briefly testify at hearing and confirm for the Smith-Rouses under oath the permissible scope of testimony by them without infringing upon their Foster Home Contract with the Kentucky Cabinet. Yet, this too prompted a less than ideal response from the parties. Both sides offered information about their communications with Kentucky Cabinet representatives in follow up to the Court's Order, but instead suggested that the Kentucky Cabinet's representation to them that it should be fine for the Smith-Rouses to testify should be sufficient. However, the Court is mindful that at the outset of this miscellaneous action Defendants stated that a Cabinet representative had informed the Smith-Rouses they would need to appear and did not have a basis to refuse to answer questions,

7

while the Smith-Rouses stated they had been informed by the Cabinet that they were not authorized to disclose information regarding Mr. Craig. (*See* R. 26 at Page ID 302-03). Thus, without testifying at a hearing or at least an affidavit or declaration from a Kentucky Cabinet representative, the Court does not view the point as being satisfactorily resolved for purposes of addressing the merits of the Motion to Compel.

Finally, it is apparent that, based on the filings in this Court and the MDL docket, discovery is not proceeding in non-bellwether cases. Multiple factors lend themselves favorably to this conclusion. The schedule refers to bellwether cases throughout and Plaintiff's case is no longer a bellwether case. (*See* 22-MD-3047-YGR, R. 604; *see also* 22-MD-3047-YGR, R. 1159). Judge Gonzalez Rogers's statement that "[a]ll of the discovery has been taken" was accepted by counsel on both sides of the MDL as an order closing discovery for non-bellwether cases. (*See* R. 24-1; *see also* R. 24-3). To be sure, there is no order directly staying discovery for cases not selected to continue to trial. However, based on the docket, the general understanding among parties seems to be that discovery should not continue while the bellwether cases are tried. This is for good reason too, as this abstention furthers "the broader purpose of bellwether trials, which serve 'twin goals' of being 'informative indicators of future trends and catalysts for an ultimate resolution.'" *In re E.I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 919 n.3 (6th Cir. 2022) (citations omitted).

In sum, the Smith-Rouses are proceeding *pro se* in this matter and nothing in the record suggests they are being intentionally and unnecessarily evasive about being deposed, but rather that they simply do not wish to run afoul of the confidentiality requirements that continue to apply to them as an active foster home. Under all of the circumstances here, granting the Motion to Dismiss will permit the parties to make an informed decision in the future about whether it is even

necessary to depose the Smith-Rouses. If it is later determined that depositions of the Smith-Rouses are needed, the Defendants can reassert their Motion to Compel at that time, if still necessary.

### III.     CONCLUSION AND RECOMMENDATION

As explained above, it is not the appropriate time to assess Defendants' Motion to Compel at this time. (R. 1). A number of factors lead to this conclusion, including: (1) Plaintiff's claims might be resolved without the necessity of deposing the Smith-Rouses; (2) resolving the merits of the Motion to Compel would require an in-depth analysis of Kentucky's heavily regulated foster parenting system; and (3) because Plaintiff's case was not a bellwether case selected to proceed to trial, it would be prudent to allow the other cases to proceed in the ordinary course before addressing this discovery dispute. If the depositions become necessary to address Plaintiff's claims, efforts to compel the Smith-Rouses testimony can be reasserted at that time.

Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion to Dismiss (R. 24) **be granted** and this miscellaneous action on Defendants' Motion to Compel (R. 1) **be dismissed without prejudice**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right to appeal. *Howard*, 932 F.2d at 509. A party may respond to

another's objections within fourteen (14) days of being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).

      Signed this 8th day of October, 2025.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\Judge-CJS\DATA\Orders\civil cov\2025\25-56-DCR R&R to grant MTD.docx